■ INSURANCE CORPORATION OF NEW YORK, Respondent, v UNITED STATES FIRE INSURANCE COMPANY, Appellant, et al., Defendant. [882 NYS2d 18]—

Order, Supreme Court, New York County (Carol R. Edmead, J.), entered February 7, 2008, which, insofar as appealed from, denied the cross motion of defendant United States Fire Insurance Company (US Fire) for summary judgment dismissing the complaint as against it, reversed, on the law, without costs, and the cross motion granted. The Clerk is directed to enter judgment dismissing the complaint as against US Fire. Appeal from order, same court and Justice, entered June 24, 2008, which, inter alia, denied US Fire's request to rescind an insurance policy, unanimously dismissed, without costs, as abandoned.

While the motion court found that the insured, defendant BFC Construction Corp., gave late notice of two claims to US Fire, its excess insurer, the court also deemed US Fire's disclaimer untimely. US Fire issued its disclaimers on April 28, 2006, and the court determined that US Fire had notice on March 16, 2006.

However, the record establishes that US Fire actually received proper notice on April 20 rather than March 16. Pursuant to the terms of its excess policy with US Fire, BFC was required to provide US Fire "prompt written notice of an occurrence, which might result in a claim." Notice was to include how, when and where the occurrence took place; the names and addresses of injured parties and witnesses; and the nature and location of any injury or damage. "An insurer's obligation to cover its insured's loss is not triggered unless the insured gives timely notice of loss in accordance with the terms of the insurance contract" (*Power Auth. of State of N.Y. v Westinghouse Elec. Corp.*, 117 AD2d 336, 339 [1986], citing *Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp.*, 31 NY2d 436 [1972]; *see also Travelers Ins. Co. v Volmar Constr. Co.*, 300 AD2d 40 [2002]). Accordingly, US Fire's disclaimers, issued eight days after receiving notice, were timely as a matter of law (*see e.g. Public Serv. Mut. Ins. Co. v Harlen Hous. Assoc.*, 7 AD3d 421, 423 [2004]). Concur—Gonzalez, P.J., Moskowitz and Renwick, JJ.

Nardelli and Catterson, JJ., concur in a separate memorandum by Catterson, J., as follows: I concur with the result reached by the majority but write separately because I believe that the issue of notice obligations under the primary policy of insurance and under an excess policy of insurance requires greater explication.

This is a dispute between a primary insurer (plaintiff) and an excess insurer (hereinafter referred to as U.S. Fire). The plaintiff issued a commercial general liability policy to the defendant

BFC Construction Corp. (hereinafter referred to as BFC) for the period January 1, 2001 to January 1, 2002. U.S. Fire, through Crum & Forster, issued an excess insurance policy to BFC for the same period. BFC has primary coverage from other insurers in addition to plaintiff.

The primary policy issued by plaintiff has a $2 million general aggregate limit (except for products-completed operations, which are not at issue). The excess insurance policy issued by U.S. Fire states:

"1. YOU must see to it that WE receive prompt written notice of an occurrence, which may result in a claim. Notice should include:

"a. How, when and where the occurrence took place;

"b. The names and addresses of any injured persons and witnesses.

"c. The nature and location of any injury or damage arising out of the occurrence.

"2. If a claim is made or suit is brought against YOU, YOU must see to it that WE receive prompt written notice of the claim or suit.

"3. YOU and any other involved insured must:

"a. Immediately send US copies of any demands, notices, summons, or legal papers received in connection with the claim or suit."

The policy also says, "A notice given by, or on behalf of, the insured, or written notice by, or on behalf of, the injured person or any other claimant, to any licensed agent of ours in New York State with particulars sufficient to identify you, shall be deemed notice to us."

On March 9, 2006, Tom Ward of Ward North America, LP—plaintiff's third-party claims administrator, sent an e-mail to Jill Pompeii of Crum & Forster. He wrote:

"As we discussed, this matter [*Dagati v BFC Constr.*] is scheduled for trial on March 16, 2006. As I advised you, the Inscorp [i.e., plaintiff's] policy issued to BFC Construction had $1 million per occurrence and $2 million aggregate coverage. To date, $1.2 million has been paid as indemnity, leaving $800,000 as the remainder of the aggregate.

"I am issuing the attached letter today to our insured. You should receive a hard copy shortly.

"Inscorp currently has two other claims open on this policy: Daniel Torres . . . and Regolodo."

The attached letter stated, "the General Aggregate Limit is

likely to be used up in the payment of judgments or settlements."

Pompeii replied, "it is my tentative plan to attend this trial . . . [P]lease provide details regarding where and when pretrial settlement negotiations will occur."

Ward forwarded the e-mails to another person within his company, adding, "I don't know if she [Pompeii] is monitoring the other two claims [Torres and Regolodo]."

On March 16, 2006, Ward North America faxed to Crum & Forster a letter that it had sent to BFC on March 15. The letter said:

"Our office previously received a copy of the Summons and Complaint filed on behalf of Daniel Torres. It is alleged that Mr. Torres sustained injury on July 30, 2001 on a sidewalk located adjacent to your construction project at 223/225 East 7th Street, New York . . .

"Please allow this correspondence to serve as The Insurance Corporation of New York's notification that based upon occurrences, offenses, claims or suits which have been reported to INSCORP and to which this insurance may apply, the General Aggregate Limit is likely to be used up in the payment of judgments or settlements."

Ward North America also faxed Crum & Forster a copy of the summons and complaint in the *Regolodo* action.

On April 20, 2006, Ward North America sent Crum & Forster a tender letter stating that the primary policy was likely to be exhausted and that the excess policy would now be implicated.

U.S. Fire disclaimed any obligation to defend or indemnify BFC in light of the late notice in both cases. It also rejected Ward's tender in the *Torres* case.

In February 2007, the plaintiff brought the instant action. It sought a declaration that its policy had been exhausted and that U.S. Fire was required to defend and indemnify BFC in *Regolodo*. It also sought $375,000 (the amount it had allegedly overpaid in the *Torres* settlement). Finally, it sought the "amount of defense costs which have been and will be incurred in the *Regolodo* action since January 31, 2007."

U.S. Fire answered. One of its affirmative defenses was that "[the] [p]laintiff and BFC failed to provide timely notice of the *Torres* and *Regolodo* claims to U.S. Fire."

Ultimately, the plaintiff moved for summary judgment and U.S. Fire cross moved on the basis of, inter alia, late notice. Supreme Court denied both motions.

Initially, U.S. Fire argues that the plaintiff could not rely on

any correspondence prior to April 20, 2006 because under the terms of the excess policy, the actual insured, BFC Construction, was required to provide notice. U.S. Fire cites *Sorbara Constr. Corp. v AIU Ins. Co.* (41 AD3d 245, 246 [1st Dept 2007], *affd* 11 NY3d 805 [2008]), for the proposition that the insurer's actual knowledge of the claim from another source does not relieve the insured of its own obligation to provide notice.

This misstates the issue and furthermore, it is not determinative of the outcome. In *Sorbara*, the question presented to the Court was whether notice to a worker's compensation policy carrier would be sufficient notice to a liability insurance arm of the same company. (41 AD3d at 246.) In this case, notice was provided directly to U.S. Fire as the excess carrier, rather than to a different division of the same carrier. Indeed, the notice provided by an agent of the primary liability carrier to U.S. Fire was specifically contemplated by the policy as quoted above.

In my view, the question then turns on whether the notice provided in the pre-April 20, 2006 correspondence is sufficient under the terms of the excess policy. For the reasons that follow, I would find that the pre-April 20 correspondence failed to comport with the clear policy provisions.

Under the law in existence at the time the dispute arose,* it was beyond dispute that: "prompt notice to primary insurers is a condition precedent to coverage. Apart from the fact that their coverage does not immediately attach after an occurrence but rather attaches only after the primary coverage for the occurrence is exhausted (*see, e.g., Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co.*, 93 AD2d 337, *affd* 61 NY2d 569), excess insurers have most of the rights and obligations of primary insurers. They have the right to investigate claims and to participate in settlement negotiations . . . Accordingly, all of the salient factors point to the conclusion that excess carriers have the same vital interest in prompt notice as do primary insurers and that the *Security Mut.* rule should be applicable." (*American Home Assur. Co. v International Ins. Co.*, 90 NY2d 433, 442-443 [1997], citing *Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp.*, 31 NY2d 436 [1972].) Given the clear pronouncement of *American Home*, the sufficiency of the notice provided by the primary insurance carrier to US Fire as excess carrier must be measured by the specific terms of U.S. Fire's

---

* Effective January 17, 2009, Insurance Law § 3420 now requires insurance companies to show prejudice as a condition to denying coverage based on late notice of claim if notice is provided within two years of the time it was due. If notice is provided more than two years after it was due, insured must show a lack of prejudice.

policy. The terms of the policy circumscribe the "vital interests" of the excess carrier.

The excess policy, as set forth above, plainly required that notice include far more detail about the occurrences at issue than was supplied by the primary carrier. Indeed, the record contains no evidence that the primary carrier ever complied with the bulk of the notice requirements. The March 16th fax to U.S. Fire merely attached the summons and complaint in *Regolodo* and a letter concerning *Torres*. The March 14th e-mail asked U.S. Fire to attend the trial in *Dagati*. The March 9th e-mail to U.S. Fire merely notified U.S. Fire that *Dagati* was scheduled for trial. None of these communications satisfied the policy provisions.

It should also be noted that none of these communications put U.S. Fire on notice that the excess policy would be implicated, or even that it was "reasonably likely" that the excess policy would be involved. (*See Long Is. Light. Co. v Allianz Underwriters Ins. Co.*, 24 AD3d 172, 173 [1st Dept 2005], *lv dismissed* 6 NY3d 844 [2006].) Thus, the only possible notice to U.S. Fire was the tender letter of April 20, 2006. Given the paucity of information conveyed to U.S. Fire prior to that time as well as the age of the claims involved, U.S. Fire's disclaimer was timely. [*See* 18 Misc 3d 1131(A), 2008 NY Slip Op 50257(U).]